IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.   Case No. 1:24-cr-00097-MLG-1

LEONARD JOHN LUCERO,

    Defendant.

**MEMORANDUM ORDER AND OPINION OVERRULING
DEFENDANT'S OBJECTION TO APPLICATION OF
U.S. SENTENCING GUIDELINES SECTION 2K2.1(b)(6)(B)**

Defendant Leonard John Lucero pled guilty to four counts of being a felon in possession of a firearm and ammunition pursuant to 18 U.S.C. §§ 922(g)(1) and 924. Doc. 43 at 2-4, 15. The United States Probation Office ("Probation") filed a presentence investigation report ("PSR") recommending application of a four-level sentencing enhancement under Section 2K2.1(b)(6)(B) of the United States Sentencing Guidelines because Lucero "possessed dozens of firearms in connection with [other] felony offense[s]," namely "possession with intent to distribute marijuana" and "receiving stolen property." Doc. 45 at 7 ¶ 25; *see also* 6 ¶ 16. Lucero objects to this proposed sentencing increase, arguing that the Government has not demonstrated by a preponderance of the evidence that he committed either of the "other" felony offenses alleged in the PSR and the Government's Sentencing Memorandum. Doc. 51 at 2-4. He alternatively contends that the Government fails to show that any of the firearms were "possessed in connection with" either of the other felonies as defined by Section 2K2.1(b)(6)(B) sentencing-enhancement requirements. *Id*. Having considered the parties' positions, the Court overrules Lucero's objection.

## BACKGROUND

In December 2022, local FBI agents received credible reports that Lucero was selling controlled substances and firearms out of four rented StorWise Self Storage units in Albuquerque, New Mexico. Doc. 1 at 3 ¶ 5; Doc. 45 at 3 ¶ 9. The agents executed a search warrant and uncovered a total of thirty-six firearms across all four of Lucero's rented units, including some that were stolen, modified to be semiautomatic, or missing serial numbers. Doc. 45 at 5 ¶ 13, 6 ¶ 16. Some of these weapons were stored in their cases; others were left out and scattered throughout each of the storage units. Doc 56 at 19:3-11. All firearms and cartridges of ammunition were manufactured outside of New Mexico, and therefore, implicated in interstate commerce. Doc. 1 at 3 ¶ 6; Doc. 45 at 6 ¶ 14.

Lucero admits to violating the statutory law prohibiting felons from possessing, shipping, or transporting firearms in interstate commerce. *See* 18 U.S.C. §§ 922(g)(1), 924; *see also* Doc. 43 at 4 (pleading that "I, Leonard Lucero, knowingly possessed at least one firearm in each of four storage units [and] I knew that before that date I had been convicted of a felony crime"). But the Government argues (and Probation agrees) there were other felonious aspects to Lucero's illicit firearm operation that the Court should consider when determining his sentence. Doc. 45 at 6 ¶ 16, 7 ¶ 25; Doc. 52 at 3. First, FBI agents seized 852.1 gross grams of marijuana from Lucero's rented storage units. Doc. 45 at 5 ¶ 13. Second, there were "hundreds of suspected stolen items with a combined value of over $100,000," ranging from hundreds of bottles of alcohol to home-improvement equipment, electronics, and other expensive merchandise. *Id*. Many of these items were properly identified by local store employees as their missing property. Doc. 56 at 18:5-13. The Government asserts that the evidence presented demonstrates a sufficient connection between

Lucero's possession of firearms and these other crimes that warrant an offense level enhancement pursuant to Section 2K2.1(b)(6)(B) of the Sentencing Guidelines. The Court agrees.

## DISCUSSION

**I.     Section 2K2.1(b)(6)(B)**

A defendant's base offense is increased by four levels "[i]f the defendant . . . used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense[.]" U.S. Sent'g Guidelines Manual § 2K2.1(b)(6)(B) (U.S. Sent'g Comm'n 2024). The relevant application note instructs the Court to apply the enhancement if the firearm "facilitated, or had the potential of facilitating," another felony offense. *See id.* cmt. n.14(A). A separate felony need not be charged for the enhancement to apply. *Id.* cmt. n.14(C) (defining "another felony offense"). But the Government must demonstrate "by a preponderance of the evidence that the firearm facilitated or had the potential to facilitate, i.e., make easier, another felony offense." *United States v. Sanchez*, 22 F.4th 940, 942 (10th Cir. 2022) (emphasis omitted).

The United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") recently provided guidance that Section 2K2.1(b)(6)(B) operates on two separate prongs. *See United States v. Aragon*, 112 F.4th 1293 (10th Cir. 2024). The Government can recommend a four-level enhancement under "prong one" when the "defendant has completed another felony offense." *Id.* at 1299 ("[U]nder prong one, the past tense of the verbs "used" and "possessed" requires a connection between these actions and a committed felony offense[.]"). In that scenario, the Government must show that the defendant either "used a firearm to facilitate a committed felony offense" or "possessed a firearm for its potential in facilitating a committed felony offense[.]" *Id.*

at 1297 (emphases omitted). "Prong two" provides that the sentencing enhancement can also extend to scenarios in which "the defendant possessed a firearm [or transferred a firearm to someone else] with the knowledge, intent, or reason to believe that he or someone else would later use or possess the firearm to facilitate a future felony offense[.]" *Id.* at 1299. In other words, the enhancement can apply even if no felony offense has been committed, so long as there remains knowledge, intent, or reason to believe the defendant possessed or transferred the firearm to facilitate a future offense. Again, the Government bears the burden of establishing the requisite facts justifying prong two's application. *See id.* at 1299-1300.

The PSR proposes a Section 2K2.1(b)(6)(B) sentencing enhancement because law enforcement located several firearms in Lucero's storage units. Doc. 45 at 5 ¶ 13, 6 ¶ 16. Probation connects those illicit firearms to the felony offenses of receipt of stolen property and possession with intent to distribute marijuana. *Id.* at 7 ¶ 25. The Government concurs with Probation without identifying under which prong the enhancement should arise. *See* Doc. 52. The Court determines that prong one applies in both instances.

## II.     Felony Receipt of Stolen Property

During the evidentiary hearing on Lucero's objection to the PSR, the Government asserted that it had received credible intelligence from an informant that Lucero often used his four rented storage units as meeting sites to exchange firearms and drugs for stolen goods. *See* Doc. 56 at 6:23-7:2, 9:21-10:12. Based on that information, the FBI obtained and executed search warrants. *Id.* at 8:3-12; *see also* Doc. 1 at 2, ¶ 3. At those storage units, federal agents recovered thirty-six firearms, large bags of marijuana, and a significant quantity of stolen goods estimated to be worth over $100,000. Doc. 56 at 8:17-9:10; *see also* Doc. 45 at 3-4 ¶ 9, 5 ¶ 13, 6 ¶ 16.

These largely undisputed facts lead the Court to conclude that Lucero committed the felony crime of receipt of stolen property. *See* NMSA 1978, § 30-16-11(H) (2006) ("Whoever commits

receiving stolen property when the value of the property exceeds twenty thousand dollars ($20,000) is guilty of a second degree felony."); *id.* § 30-16-11(B)(1) (explaining that the statute's intent requirement is satisfied when the accused "is found in possession or control of property stolen from two or more persons on separate occasions . . . ."). Indeed, employees from the affected businesses confirmed that hundreds of the items located in Lucero's storage units were stolen from them. Doc. 56 at 18:5-13. The question then (under prong one) is whether Lucero used a firearm to facilitate the receipt of that stolen property.

At the evidentiary hearing on this matter, FBI Special Agent Jordan Spaeth testified "that Mr. Lucero acted as a funnel" for these stolen items, receiving them in exchange for "goods, such as guns and drugs."[1] *Id.* at 10:25-11:3. He further reported that law enforcement officers found firearms in Lucero's storage units. *Id.* at 19:3-11. Some of those weapons were in sealed boxes while others were out in the open. *Id.* Agent Spaeth could not recall whether any of the firearms were loaded, but the storage units contained "thousands of rounds of various rifle, pistol, and shotgun ammunition . . . ." Doc. 45 at 5 ¶ 13; Doc. 56 at 19:12-14. Given this evidence, the Court finds that the Government sufficiently demonstrated that Lucero used the firearms as a means of facilitating the receipt of stolen goods worth more than $20,000. Section 2K21.1(b)(6)(B)'s first prong thus applies.

Further, given the "volume of stolen property, guns, and ammunition [in the storage units]" and that some of the weapons were "spread throughout the [storage units], with some out in the open[,]" the Court can reasonably infer that Lucero kept "the guns to secure his stolen property" should the need arise. *See United States v. Basnett*, 735 F.3d 1255, 1262 (10th Cir. 2013) (finding "a reasonable basis to link the guns to a separate offense involving transportation of stolen

---

[1] The Court finds Agent Spaeth's testimony to be credible.

5

property" when guns and ammunition were stored away and scattered "out in the open" in defendant's home while sixty stolen items were being harbored there). Indeed, Lucero had thirty-six firearms and thousands of rounds of ammunition across each of the storage units. Doc. 45 at 5 ¶ 13. The Government's proffered evidence may not prove that Lucero affirmatively *used* those guns to secure any of the stolen property also found in those storage units. But Section 2K2.1(b)(6)(B) also applies when the available firearms could have *facilitated* the "other" felony offense, i.e., made it easier for Lucero to receive and store stolen property in his storage units. *See Sanchez*, 22 F.4th at 942. This is the case here, providing an additional basis for the Court to apply the enhancement.

In sum, the evidence shows that Lucero used firearms by trading them in exchange for stolen goods and openly possessed firearms in an accessible manner to secure his cache of stolen property. The Court therefore finds that it is more likely than not Lucero used and possessed firearms to commit felony receipt of stolen property and to facilitate the commission of that crime. That conclusion warrants application of Section 2K2.1(b)(6)(B)'s four-level enhancement under prong one.

**II.     Possession With Intent to Distribute Marijuana**

The PSR also proposes applying Section 2K2.1(b)(6)(B)'s sentencing enhancement based on the conclusion that Lucero carried firearms in connection with felony possession of marijuana with intent to distribute. *See* Doc. 45 at 5 ¶ 13, 6 ¶ 16, 7 ¶ 25; *see also* NMSA 1978, § 26-2C-28(A)(2) (2021) ("As used in this section, 'traffic' means the . . . distribution, sale, barter or giving away of cannabis products; or . . . possession with intent to distribute, sell, barter or give away cannabis products."). Again, in considering whether to apply the enhancement, the Court first considers whether Lucero committed a separate felony offense. The Court then assesses whether

Lucero used firearms to facilitate (or for their potential to facilitate) that separate offense. *Aragon*, 112 F.4th at 1297.

Here, Agent Spaeth testified that local illicit firearms trades often involve "people who want something, probably drugs or to sell guns" who "don't have cash to purchase these items" and "go to a store and steal items" that they then exchange for drugs. Doc. 56 at 9:21-10:12. Further, the PSR states that the FBI located several bags of marijuana in Lucero's storage units "containing an aggregate 852.1 gross grams of marijuana." Doc. 45 at 5 ¶ 13. Possession of this quantity of marijuana exceeds typical personal-use amounts by nearly four-fold and is a felony. *See* NMSA 1978, § 26-2C-30(B)(2) (2021) (criminalizing possession of more than eight ounces, or 227 grams, of cannabis at one time as a fourth-degree felony); § 26-2C-25(A)(2) (defining a personal-use amount as two ounces of cannabis unless "the excess is stored in the person's private residence and not visible from a public place . . . ."); s*ee also* 16.8.2.40(H)(a) NMAC (restricting licensed commercial and medical cannabis vendors to selling no more than two ounces of cannabis to a single customer). When viewed in conjunction with Agent Spaeth's testimony, it is reasonable to infer that Lucero trafficked marijuana for stolen goods. *See United States v. Moore*, 42 F. App'x 394, 397 (10th Cir. 2002) (holding that 246 grams of marijuana in [Defendant's] house, relevant circumstantial evidence, and the testimony of a former narcotics officer permitted "the jury [to] reasonably infer that [Defendant] intended to distribute marijuana"). Accordingly, the Court finds that the Government adequately established that Lucero committed the felony offense of unlawfully possessing cannabis with intent to distribute.

The Court agrees with the Government that based on the PSR and Agent Spaeth's testimony, "[a]ll available evidence supports the Probation Office's assessment that" Lucero's relevant firearms convictions are connected to his drug trafficking. Doc. 52 at 3. Indeed, Section

2K2.1(b)(6)(B)'s application note states that sentencing enhancements should apply "in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia[,]" and that such application "is warranted because the presence of the firearm has the potential of facilitating another felony offense . . . ." *Id.* cmt. n.14(B). This case's facts and the proximity of Lucero's firearms (and ammunition) to the distribution quantity of marijuana justifies Section 2K2.1(b)(6)(B)'s application. *See, e.g.*, Doc 56 at 17:18-18:4, 19:3-11 (establishing that most of the firearms were sealed in boxes or cases, but a few were inexplicably "just loose" and easily accessible in a set of storage units that were otherwise characterized as being organized).

Tenth Circuit precedent accords with that conclusion. For example, in *United States v. Martinez*, the court categorized firearms as "tools of the trade" for drug trafficking and "probative of an accused's participation . . . in the charged distribution offense[]." 938 F.2d 1078, 1083 (10th Cir. 1991). Three months later, in *United States v. Coleman*, the court followed this same line of reasoning, affirming the Government's argument "that [an] enhancement was appropriate because the firearms were found at the arrest scene and because the testimony showed that the conspirators kept the weapons for protection." 947 F.2d 1424, 1429 (10th Cir. 1991). In fact, the *Coleman* Court refused to vacate the sentencing-enhancement recommendations adopted by the lower court even after an acquittal on the firearm charges themselves. *See id.* ("We have concluded that the trial court did not err in enhancing Coleman's sentence for weapons possession despite his acquittal of the firearms charge."). Similarly, in *United States v. Justice*, the Tenth Circuit found that Defendant's possession-of-methamphetamine offense triggered a Section 2K2.1(b)(6)(B) sentencing enhancement because when "firearms [are] within easy reach, and they [are] loaded[,] . . . [a] reasonable person could find that the firearms gave [the defendant] a sense of security

emboldening him to venture from his home with drugs that someone might wish to take from him by force." 679 F.3d 1251, 1255 (10th Cir. 2012). The *Justice* Court reasoned that possession of a firearm can serve a dual function when being evaluated for Section 2K2.1(b)(6)(B) sentencing-enhancement purposes. *Id.* (adopting another district court's explanation that if a defendant "go[es] and buy[s] a gun because [they're] concerned about [their] safety but [they are] also either dealing or using drugs, it may very well be that [they're] using that gun for dual purposes" (internal quotation marks omitted) (quoting *United States v. Fuentes Torres*, 529 F.3d 825, 826 (8th Cir. 2008))).

Given the preceding, the Court finds that the Government has met its burden of establishing that Lucero used firearms to facilitate drug-trafficking operations, providing an additional ground for applying Section 2K2.1(b)(6)(B)'s sentencing enhancement.

## CONCLUSION

For the foregoing reasons, the Court finds Section 2K2.1(b)(6)(B)'s four-level sentencing enhancement applies. The Court consequently overrules Lucero's objection.

It is so ordered.

UNITED STATES DISTRICT JUDGE
MATTHEW L. GARCIA

9